**Fill in this information to identify the case:**

Debtor Name ___Legacy Enterprises of North America, LTD___

United States Bankruptcy Court for the: ___Eastern___   District of ___NC___
(State)

Case number: ___24-03477-5-JNC___

❑ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

02/20

Legacy Enterprises of North America, LTD **Plan of Reorganization, Dated February 17, 2025.**

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

See Addendum.

### B. Liquidation Analysis

See Addendum.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. (Response: See projections, attached as Exhibit D.)

The Plan Proponent has provided projected financial information. See Addendum and Attachments thereto.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2). See Addendum and attachments thereto.
The final Plan payment is expected to be paid as indicated in the attached Addendum.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of [insert the name of the Debtor] (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:

| | |
|---|---|
| 3 | classes of priority claims; |
| 7 | classes of secured claims; |
| 2 | classes of non-priority unsecured claims; |
| 0 | and  classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01 **Classes 1 - 3**...............................    All allowed claims entitled to priority under § 507(a) of the Code(except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02 **Classes 4- 10**.............................    Secured claims under to the extent allowed under § 506 of the Code.

2.03 **Classes 11-12**................................. All non-priority unsecured claims allowed under § 502 of the Code.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims**    See Addendum.

3.02 **Administrative expense claims**    Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

| | | |
|---|---|---|
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid as specified in the Addendum. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1-3 - **Priority claims** excluding those in Article 3 | ☒ Impaired<br>☒ Unimpaired | See Addendum. |
| Class 4-10 – **Secured claims**. | ☒ Impaired<br>☒ Unimpaired | See Addendum. |
| Class 11-12 – **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | See Addendum. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: |
| | | (i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>See Addendum. |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

The Debtor will continue operations of its trucking business to fund payments under the Plan with the addition trucks recovered during the pendency of this matter. The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## Article 8: General Provisions

| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:<br><br>See attached Addendum. |
|---|---|---|
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan and Addendum are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | See attached Addendum. |

[8.08  **Retention of Jurisdiction**        See attached Addendum.

| **Article 9: Discharge** |
|---|

**Discharge if the Debtor is a corporation under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

> (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

| **Article 10: Other Provisions** |
|---|

All provisions in the attached Addendum are hereby incorporated herein by reference. To the extent there is any conflict between the language in the Addendum and the language in this Form 425A, the language in the Addendum shall control.

Respectfully submitted,

✗   s/ David Faulk _____        David Faulk, Managing Member of Debtor

✗   s/George Mason Oliver _____        George Mason Oliver, Counsel for Debtor

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

In the Matter of:                                    Chapter 11
**Legacy Enterprises of North America, LTD**          Case No.: 24-03477-5-JNC
            **Debtor**

## ADDENDUM TO
## PLAN OF REORGANIZATION

Pursuant to the provisions of Sections 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 and 1190), Legacy Enterprises of North America, LTD, (the "Debtor") hereby submits the following Plan of Reorganization (the "Plan"):

## I. INTRODUCTION

**A.    Background.**

On October 4, 2024 ("Petition Date"), Debtor filed a voluntary petition for relief pursuant to Chapter 11 Subchapter V of the United States Bankruptcy Code.

Debtor is a C corporation organized under the laws of Nevada with its principal operations based in Bertie County. Debtor's business activities have focused solely on commercial trucking. Debtor requires the use of multiple freightliners to operate its business, in addition to other trailers and trucking equipment. In 2024, Debtor was in default on the payments to World Business Lenders, which initiated foreclosure proceedings on 105 Dan Street, Windsor, NC 27983.

Since the Petition Date, Debtor has complied with the requirements of the Bankruptcy Code, orders of the Court, and the requests of the Bankruptcy Administrator's office. An intake conference with the Bankruptcy Administrator's office was held on October 30, 2024 and a Section 341 meeting of creditors was held on November 12, 2024. Following motions by Debtor [Doc. Nos. 31, 35], the Court entered two orders granting motions for turnover of property of the Bankruptcy Estate [Doc. Nos. 38, 39], and Debtor continues to seek the turnover of the referenced property, which includes six 2017 Freightliners (the "Trucks," as more specifically defined in Class 6). The Court has also entered two Orders directing that creditors appear and show cause for failing to turn over the Trucks, and has another hearing scheduled as to the show cause proceedings. [Doc. No. 79] Debtor needs the Trucks, which are the subject of these Orders, in order to generate sufficient income to pay creditors. Following receipt of the Trucks and completion of any necessary repairs thereto, Debtor will be able to hire contract operators/drivers for those Trucks under new trucking contracts within 90 days or less. Debtor anticipates that any new trucking contracts will reduce expenses and be based out of North Carolina replacing its prior over-the-road contracts based out of Chicago, Illinois.

Debtor does not anticipate it will need further reorganization after the confirmation of the Plan.

**B.    Summary of the Plan.**

1

The Plan contemplates a reorganization of debts and continuation of Debtor's business. In accordance with the Plan, Debtor intends to satisfy certain creditor claims from income earned through continued operations.

The Plan is based on Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts as described herein.

Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

The Plan should be read in conjunction with the Addendum to the Plan. Debtor urges Creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Addendum to the Plan in making a determination on voting on the Plan.

## II. DEFINITIONS

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.      "ALLOWED CLAIM" shall mean (a) any Claim against Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.      "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.      "BUSINESS" shall mean the commercial trucking operations of Debtor.

7.      "CLAIM" shall mean a duly listed or a timely filed Allowed Claim which is allowed and ordered to be paid by the Court.

8.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

9.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

10.     "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

11.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

12.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of Debtor.

13.     "CREDITORS" shall mean all creditors of Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

14.     "DEBTOR" shall mean Legacy Enterprises of North America, LTD.

15.     "DISBURSING AGENT" shall mean Debtor or the person selected by the Court who shall perform the duties and have the rights and obligations described herein.

16.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under Debtor's Plan.

18.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of Debtor in property, whether personally held or not, at the time of Debtor's bankruptcy filing.

19.     "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

20.     "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

21.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

24.     "PETITION DATE" shall mean the date Debtor filed a voluntary chapter 11 petition.

25.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

26.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

27.    "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28.    "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by Debtor, to the extent of the value of the collateral.

29.    "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

30.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

### III. CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

A.    **Class 1 - Administrative Costs:**

1.    Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| The Law Offices of Oliver & Cheek, PLLC | Attorney for Debtor | To be determined by the Court |
| Joseph Z. Frost | Subchapter V Trustee | To be determined by the Court |

2.    Impairment.    This class will be impaired.

3.    Treatment.    Administrative costs and expenses approved by the Court shall be paid in cash and in full from Debtor's income generated by its operations.  Debtor anticipates the only administrative claims will be those of the Debtor's professionals and the Trustee.

**NOTICE OF BAR DATE: All administrative claims, other than claims of a court approved professional, shall be filed no later than the first hearing date set for confirmation of the Plan. Otherwise, such claims shall be waived and shall not be asserted against Debtor at any time.**

B.    **Class 2 – Ad Valorem Taxes:**

1.    <u>Description of Claims.</u>  Class 2 consists of Claims for taxes owed by Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of Debtor based upon the value of the property assessed.  Debtor is aware of no claims in this class.

2.    <u>Impairment</u>.    This class will be unimpaired.

3.    <u>Treatment</u>.    Debtor proposes to pay claims in this class, if any, in full, from Debtor's income from operations.  Debtor does not anticipate that any such claims will be filed.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See <u>In Re St. Lawrence Homes, Inc.</u>, Case No. 09-00775-8, Order dated July 28, 2010, citing <u>In Re Members Warehouse, Inc.</u>, 991 F.2d 116, 118-119 (4th Cir. 1993).*

C.    **Class 3 – Tax Claims:**

1.    <u>Description of Claims.</u>   Class 3 consists of claims against Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law.  Debtor is aware of the following Claim(s) in this class:

| Taxing Entity | Claim No. | Amount Owed |
|---|---|---|
| IRS | 4 (priority) | $72,104.16 |
| NC Dept. of Revenue | 2 (priority) | $3,014.10 |

2.    <u>Impairment</u>. This class will be unimpaired.

3.    <u>Treatment</u>.   Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.  Debtor does not anticipate that any such claims will be filed.

**Unsecured priority tax claims**, described in Bankruptcy Code § 507(a)(8) shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the Effective Date.  For feasibility purposes, Debtor estimates each quarterly payment will be $5,819.97.  Any such allowed claim shall include interest at the rate determined under applicable nonbankruptcy law.  Notwithstanding the foregoing, the Holder of an allowed unsecured priority tax claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed unsecured priority tax claim.  Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.

**Secured claimants**, if any, shall retain their secured interest in the property of Debtor.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. Debtor proposes to pay any such claims in full, from Debtor's income from operations.  Any such allowed claim shall include interest at the rate determined under applicable nonbankruptcy law.  Notwithstanding the foregoing, the

Holder of any such claim shall not be entitled to receive any payment on account of any penalty. Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.  Debtor does not believe there are any claims in this class.

In the event that Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved.  The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals).  Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D.    Class 4: BMO Harris Bank N.A. ("BMO")

1.    <u>Description of Debt</u>.    On or about January 20, 2020, Debtor executed a Loan and Security Agreement in favor of BMO whereby Debtor agreed to pay BMO $117,303.06 over a period of 42 months. As security for the obligation, Debtor granted BMO a purchase money security interest in two 2017 Cascadia Series Freightliners ending in VIN Nos. 4067 and 4059. Debtor and BMO subsequently entered into three Modification agreements.  On October 8 2024, BMO filed Claim 1 alleging to be owed $47,517.99.

2.    <u>Impairment</u>.    This class will be impaired.

3.    <u>Treatment</u>. Debtor will treat this Claim as a secured obligation in the amount of $35,000.00. BMO shall retain its lien(s) on the 2017 Cascadia Series Freightliners ending in VIN Nos. 4067 and 4059 ("2017 CS Freightliners") with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code. The 2017 CS Freightliners are, *inter alia*, the subject of Debtor's Motion for Turnover of Property of the Bankruptcy Estate and the Court's Order granting the same. [Doc. No. 31, 38] Truck 4059 remains outside of Debtor's possession and control; however Debtor intends to pick-up Truck 4059 from R1/Yankee once it has been repaired by R1/Yankee pursuant to the Court's Order, and is once again in road-ready condition. Debtor will begin using the 2017 Freightliners in its operation, generating income for its creditors.  Debtor proposes to begin making monthly payments on this debt 90 days after the recovery and completion of repairs to the 2017 Freightliners.  Debtor will amortize this obligation over a period of 60 months with a fixed interest rate of five and one-half percent per annum until the secured portion of this debt is paid in full. For feasibility purposes, Debtor estimates that payments will be in the amount of $758.02 per month. The balance of the claim will be treated as a general unsecured debt in Class 11.  If Truck 4059 is not recovered by Debtor, Debtor will reduce the amount of the secured portion of this claim commensurately and treat a larger portion of this claim as a general unsecured debt in Class 11.  If Truck 4059 is recovered but is not operable, such will be surrendered and following said surrender, Debtor shall have no obligation to insure, maintain, or repair the collateral and shall have no obligation for the payment of any taxes, storage fees, other

6

fees, or any costs associated therewith.  The creditor shall have 60 days following the Effective Date to file a deficiency claim.  Any allowed deficiency claim shall be treated as an unsecured debt in Class 11.

**E.**     **Class 5 – Daimler Truck Financial ("Daimler")**

1.     <u>Description of Debt</u>. Debtor is indebted to Daimler, based upon its purchase of four 2015 Freightliners.  Two of them were picked up by Daimler pre-petition, and Debtor is not aware whether Daimler has picked up the other two trucks, with VIN Nos. ending in 1389 and 3873. Daimler has not filed a proof of claim.

2.     <u>Impairment</u>.     This class will be impaired.

3.     <u>Treatment</u>.     On information and belief Debtor owes $50,000.00 to Daimler for the 2015 Freightliners ending in VIN Nos. 1389 and 3873, which have a combined estimated value of $30,000.00.  There is negative equity in the 2015 Freightliners, which are not in Debtors' possession and on information and belief are being held at the direction of Daimler at truck lots in Delaware and/or Nevada.  On the Effective Date of the Confirmed Plan, the 2015 Freightliners ending in VIN Nos. 1389 and 3873 are hereby surrendered to Daimler in partial satisfaction of any indebtedness owed by Debtor.  The Debtor, following said surrender, shall have no obligation to insure, maintain, or repair the collateral and shall have no obligation for the payment of any taxes, storage fees, other fees, or any costs associated therewith.  The creditor shall have 60 days following the Effective Date to file a deficiency claim.  Any allowed deficiency claim shall be treated as an unsecured debt in Class 11.

**F.**     **Class 6 – The Garage**

1.     <u>Description of Debt</u>. On the Petition Date, Debtor listed a disputed claim owed to The Garage in the amount of $8,995.00.  The Garage received notice of the Petition, indicating that its claim was disputed, and has not filed a proof of claim; however, on information and belief The Garage retains possession or fraudulently sold to a third-party Debtor's 2017 Cascadia Evolution Freightliner ending in VIN No. 5813.  Such is subject to a turnover order [D.E. 39] and order to appear and show cause [D.E. 56].

2.     <u>Impairment</u>.     This class will be impaired.

3.     <u>Treatment</u>.  Debtor intends to file one or more adversary proceedings against The Garage related to pre- and post-petition violations of the United States Bankruptcy Code. Debtor will treat this Claim as an unsecured obligation in the amount of $0.00.  For feasibility payments to this class will be $0.00.

**G.**     **Class 7 –The Huntington National Bank ("Huntington")**

1.     <u>Description of Debt</u>. On or about September 16, 2021, Debtor executed a Promissory Note in favor of Huntington whereby Debtor agreed to pay Huntington $313,740.00 over a period of 48 months. As security for the obligation, Debtor granted Huntington a Security Agreement in four 2017 Cascadia Evolution Freightliners as defined in the Security Agreement and ending in VIN Nos. 5808, 5810, 5812, and 5813. On October 22, 2024, Huntington filed Claim 3 alleging to be owed $292,415.81.

2.      Impairment.      This class will be impaired.

3.      Treatment.  Debtor will treat this Claim as a secured obligation in the amount of $110,000.00. Huntington shall retain its lien(s) on the 2017 Cascadia Evolution Freightliners as ending in VIN Nos. 5808, 5810, 5812, and 5813 ("2017 CE Freightliners") with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code. The 2017 CE Freightliners are, *inter alia*, the subject of both of Debtor's Motion(s) for Turnover of Property of the Bankruptcy Estate and the Court's Order(s) granting the same. [Doc. No. 31, 35, 38, 39] The 2017 CE Freightliners are not yet effectively in Debtor's possession and control, Debtor continues to demand that they be turned over, and Debtor is considering other remedies to avail their immediate turnover.  Once Debtor has the 2017 CE Freightliners in its possession it will begin using them in its operation, generating income for its creditors.  Debtor proposes to begin making monthly payments on this debt 90 days after the recovery of the 2017 CE Freightliners and amortize this obligation over a period of 60 months with a fixed interest rate of five and one-half percent per annum until the secured portion of this debt is paid in full.  For feasibility purposes, Debtor estimates that payments will be in the amount of $2,190.60 per month. The balance of the claim will be treated as a general unsecured debt in Class 11.  If the 2017 CE Freightliners are not recovered by Debtor, Debtor will treat this entire claim as a general unsecured debt in Class 11.  If the 2017 CE Freightliners are recovered but one or more is not operable, based solely upon Debtor's determination of operability, such will be surrendered and following said surrender, Debtor shall have no obligation to insure, maintain, or repair the collateral and shall have no obligation for the payment of any taxes, storage fees, other fees, or any costs associated therewith.  The creditor shall have 60 days following the Effective Date to file a deficiency claim.  Any allowed deficiency claim shall be treated as an unsecured debt in Class 11.

**H.      Class 8 – R1 Truck Repair and Yankee Freight Systems, LLC ("R1/Yankee")**

1.      Description of the Claim.      R1, which also does business as Yankee, asserts that it is a secured creditor pursuant to alleged mechanics liens against Debtor's 2017 Cascadia Evolution Freightliners ending in VIN Nos. 5808, 5810, 5812, and 4067 and 4059 ("Trucks") [Claim Nos. 6-10].  The same Trucks are subject to a turnover order against R1/Yankee [D.E. 38] and two order(s) to appear and show cause against the same [D.E. 57 and 78].  On the Petition Date, Debtor listed a disputed claim owed to R1 in the amount of $40,000.00.  R1 and Yankee filed five proofs of claim, Claims 6-10, asserting secured claims against each of the five Trucks, in the total amount of $47,335.74.

2.      Impairment.      This class will be impaired.

3.      Treatment.  Debtor intends to file one or more adversary proceedings against R1 and Yankee Freight related to pre- and post-petition violations of the United States Bankruptcy Code. Debtor will treat this Claim as an unsecured obligation in the amount of $0.00 pending resolution of any adversary proceedings and the show cause orders.  Following any such resolution or final order of this Court, should any secured claim exist the amount thereof shall be amortized over a period of 60 months with a fixed interest rate of five and one-half percent per annum until the secured portion of the debt is paid in full.  Any portion of any allowed claim in this class that is not determined to be secured by this Court, will be treated as a general unsecured debt in Class 11.  For feasibility purposes Debtor estimates monthly payments to this class to be $0.00.

**I.      Class 9 – Small Business Association ("SBA")**

1.      Description of Claims.  On or about December 27, 2021, Debtor executed a Note in favor of U.S. Small Business Association ("SBA") whereby Debtor agreed to pay SBA $500,000.00 over a period of thirty years. As security for the obligation, Debtor granted SBA a Security Agreement in all tangible and intangible personal property.  The SBA filed a UCC Financing Statement on January 10, 2022. On February 7, 2025, SBA filed Claim 12 alleging to be owed $551,575.34.

2.      Impairment.    This class will be unimpaired.

3.      Treatment.      Debtor proposes to pay this claim in full, from Debtor's income from operations pursuant to the terms of the Note.  For feasibility purposes, Debtor estimates that payments will be in the amount of $2,575.00 per month.

**I.      Class 10 – World Business Lenders ("WBL")**

1.      Description of Class.   On or about May 22, 2023, Debtor executed a Business Promissory Note and Security Agreement in favor of WBL whereby Debtor agreed to pay WBL $140,000.00 over a period of 155 months. As security for the obligation, Debtor granted WBL a Security Agreement and Deed of Trust on 105 Dan Street, Windsor, NC 27983. On November 8, 2024, WBL filed Claim 5 alleging to be owed $154,172.80.

2.      Impairment.  This class will be impaired.

3.      Treatment.  Debtor will treat this Claim as a secured obligation in the amount of $154,172.80. WBL shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code. Debtor proposes to amortize this obligation over a period of 240 months with a fixed interest rate of five and one-half percent per annum. Monthly payments will begin on the 15th day of the first full month following the Effective Date of the Plan, and shall continue monthly until the secured portion of this debt is paid in full. For feasibility purposes, Debtor estimates that payments will be in the amount of $1,108.84 per month.

**J.      Class 11 – General Unsecured Creditors**

1.      Description of Class.  This class consists of all allowed, undisputed, non-contingent unsecured claims and deficiency claims listed on the Petition or as otherwise approved by the Court.

2.      Impairment.  This class will be impaired.

3.      Treatment.  The total Claims in this Class, as of the date of this filing, is estimated to be $405,605.20. In accordance with the liquidation analysis attached as "Exhibit C", Debtor has no equity with which to pay an amount to unsecured creditors. Debtor proposes to pay allowed Claims in this Class $41,000.00 at a fixed interest rate of one and one-half percent per annum.  These payments will be amortized over a period of ten years and will be paid in equal monthly payments of $368.15 commencing on the 15th day of the first full calendar month following the Effective Date. All payments to this class shall be distributed *pro rata*.

**K.      Class 12 – Executory Contracts and Unexpired Leases**

1.      Description of Class.  Debtor is a party to the following executory contracts and unexpired leases.

| Party | Type of Agreement |
|-------|-------------------|
| Yankee Freight Systems | Trucking |
| NIS | Trucking |

2.     <u>Impairment</u>.    This class will be impaired.

3.     <u>Treatment</u>.    Pursuant to 11 U.S.C. § 365, Debtor hereby rejects the aforementioned unexpired contracts as of the Effective Date.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected as of the Effective Date; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between Debtor and any secured creditor.  Debtor hereby assumes all leases in which Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

Debtor proposes to make payments under the Plan from its over-the-road trucking business.

A.  With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, Debtor shall keep the collateral insured pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt. If Debtor fails to make a payment as provided herein within thirty (30) days after its due date or fails to keep the collateral insured as provided herein within thirty (30) days after written notice from the secured creditor of such failure, the secured creditor may declare the debt in default, give notice thereof to Debtor, and exercise its remedies against the collateral that secures the debt. The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect. Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.  <u>Sale Free and Clear of Liens</u>. Any real and personal property owned by Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations. In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and

10

clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests. All real or personal property sold by Debtor shall be sold pursuant to the free and clear order to be entered. No further motions related to the sales of property shall be required; provided however, Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.  Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code.  In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.  Preservation of Right to Credit Bid.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before Debtor's deadline for accepting such contract to inform Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  Each secured creditor shall be responsible for providing Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.  Deficiency Claims.  Each secured creditor who receives the collateral securing their obligation shall have sixty (60) days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class (Class 11).  In the event Debtor obtains his Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information.

F.  De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

G.  Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to Debtor for distribution in accordance with the Plan.  If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by

11

way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, Debtor will be entitled to void said check and retain said funds to be used in Debtor's discretion. Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

H. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code. In the case of any lien that has been avoided which encumbered certain properties of Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

I. Timing of Distributions. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

J. All payments or distributions made by Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorneys' fees, such creditor must file a fee application with the Court and such costs and attorneys' fees must be approved by the Court prior to such costs and attorneys' fees becoming part of the creditor's allowed claim.

K. Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L. Revocation of Plan. Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M. Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O. Confirmation of this plan shall constitute a finding that Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition

claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.   Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.   All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that Debtor retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.   Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not Debtor, such creditor shall, within two (2) weeks therefore, inform Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.   Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.   Procedure for Payment of Professional Fees.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.   Escrow Arrangements. Unless otherwise stated in individual creditor treatments herein, Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or

13

property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by Debtor prior to the Effective Date.  This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by Debtor.

## IX.  PROVISIONS GOVERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in Debtor's schedules of liabilities.

B.    <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.    <u>Cure Period</u>.  The failure by Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.

Until the expiration of the thirty (30) day cure period, Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## X.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against Debtor in a liquidated amount or has been listed on Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on Debtor's schedules; or

(2)    Such claim has been filed against Debtor or listed on Debtor's schedules and is the subject of an existing objection filed by Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1191(a) of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if Debtor's assets were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  Section 1191(b) of the

15

Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the Plan, Debtor hereby requests and move the Court under the provisions of this Plan entitled "cramdown," for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code. In connection therewith, Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

## XI. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII. EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in Debtor.

B. **INJUNCTION**. **As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, Debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that Debtor may have against any party in interest. This injunction shall not affect any creditor's ability to enforce rights against persons other than Debtor and property not owned by Debtor.**

C. Confirmation of the Plan shall satisfy all claims or causes of action arising out of any claim settled under the terms of the Plan.

## XIII. RELEASE OF TITLE TO PROPERTY

A. <u>Vehicles</u>. Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of

title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by Debtor in this case either before or after the closing of this case.  Debtor specifically reserves the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.    Real Property.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to Debtor.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by Debtor in this case either before or after the closing of this case.  Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XIV.  APPLICATION OF PLAN PAYMENTS

A.    All payments made by Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys' fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys' fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.    Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from Debtor to the month in which they were made under the plan or directly by Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the

purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

      1.     to determine any and all objections to the allowance of claims and/or interests;

      2.     to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

      3.     to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

      4.     to determine all controversies and disputes arising under or in connection with the Plan;

      5.     to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

      6.     to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

      7.     to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

      8.     to determine all disputes regarding property of the Estate;

      9.     to establish and adjust procedures for the orderly administration of the Estate;

      10.     to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

      11.     to replace Debtor-in-possession with a Trustee for good cause shown.

      12.     to determine and resolve questions concerning the existence of defaults under the Plan;

      13.     to modify the Plan pursuant to 11 U.S.C. § 1127(b);

      14.     to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and

      15.     to issue any order necessary to carry out the Plan.

## XVI.  MISCELLANEOUS PROVISIONS

    A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

    B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and

inure to the benefit of the respective heirs, successors and assigns of Debtor, and the holders of claims and interests.

C.      Controlling Law.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      Further Assurance.  If at any time, Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      Liens.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.      Incorporation of Disclosure.   All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

G.      Credit Reporting.      Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that Debtor has filed bankruptcy and included all obligations owed to that Creditor in his Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming Debtor's Plan. Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations.  Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

H.      Adversary Proceedings.  Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.

I.      Modification of Plan.  Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

J.      Default Remedies.    Any creditor may serve notice of a default on Debtor and Debtor's counsel.  Such notices shall be in writing and delivered by registered mail to Debtor. Debtor shall have thirty (30) days to cure the default.  If the default is not cured, any creditor may take such action as the Code permits.  This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code.

K.      Granting of Liens.   If an existing lien on any property of Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

L. <u>Cancellation of Liens</u>.  Except as otherwise provided specifically in this Plan, any and all prepetition liens encumbering any of Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order.  Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

## XVII.  DISCHARGE

Upon completion of payments, Debtor and the Estate will be discharged from all Claims and Liens and Liens expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, Debtor will seek to have the case closed upon substantial consummation as set forth in § 1101(2).  Further, Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties twenty (20) days to file a response.

Respectfully submitted, this the 17th day of February, 2025.

The Law Offices of Oliver & Cheek, PLLC

By:     <u>s/George Mason Oliver</u>
        GEORGE MASON OLIVER
        N.C. State Bar No. 26587
        Email: george@olivercheek.com
        PO Box 1584
        New Bern, NC  28563
        Telephone: (252) 633-1930
        Facsimile: (252) 633-1950
        *Attorneys for Debtor*


        <u>s/ David Faulk</u>
        David Faulk,
        Managing Member

**Legacy Enterprises of North America, LTD 24-03477-5-JNC**
**Exhibit A Assets**

**ASSETS**

**Real Property**

| | | |
|---|---|---:|
| 105 Dan Street, Windsor, NC 27983 | $ | 234,700.00 |
| **TOTAL:** | **$** | **234,700.00** |

**Personal Property**

| | | |
|---|---|---:|
| WellsFargo Business Checking DIP Account (as of 2-17-25) | $ | 19,353.81 |
| Cash on hand (as of 2-17-25) | $ | 11.00 |
| Deposit for Yankee Freight | $ | 2,500.00 |
| Deposit for City of Windsor Power and Water | $ | 200.00 |
| Desks | $ | 5,000.00 |
| Computer equipment and Electronics | $ | 1,000.00 |
| 2015 Freightliner Truck VIN-34KGCD57FSGB1203 | $ | 15,000.00 |
| 2017 Freightliner Truck VIN:5808 | $ | 20,000.00 |
| 2017 Freightliner Truck VIN:5810 | $ | 30,000.00 |
| 2017 Freightliner Truck VIN:5812 | $ | 30,000.00 |
| 2017 Freightliner Truck VIN:5813 | $ | 30,000.00 |
| 2017 Freightliner Truck VIN:4067 | $ | 20,000.00 |
| 2017 Freightliner Truck VIN:4059 | $ | 15,000.00 |
| 2015 Freightliner Truck VIN:1389 | $ | 15,000.00 |
| 2015 Freightliner Truck VIN:3873 | $ | 15,000.00 |
| Trucking Equipment | $ | 1,000.00 |
| Generator, Aircomprossor, Handtools | $ | 750.00 |
| Household goods and furnishings, Books, Safety Gear, Appliances | $ | 16,000.00 |
| **TOTAL:** | **$** | **235,814.81** |

**Legacy Enterprises of North America, LTD 24-03477-5-JNC**
**Exhibit B Liabilites**

| | Claim # | | Claim Amount | |
|---|---|---|---|---|
| **Class 1:  Administrative** | | | | |
| The Law Offices of Oliver & Cheek, PLLC | | | To be determined by the Court | |
| Subchapter V Trustee: John Rhyne | | | To be determined by the Court | |
| | | | | |
| **Class 2:  Ad Valorem Taxes** | | $ | - | |
| | | | | |
| **Class 3:  Tax Claims** | | | | |
| Internal Revenue Service | 4 | $ | 72,104.16 | |
| North Carolina Department of Revenue | 2 | $ | 4,036.03 | |
| **TOTAL** | | **$** | **76,140.19** | |
| | | | | |
| **Class 4: BMO Harris Bank N.A.** | 1 | $ | 35,000.00 | |
| | | | | |
| **Class 5: Daimler Truck Financial** | | $ | - | |
| | | | | |
| **Class 6: The Garage** | | $ | 8,995.00 | Disputed |
| | | | | |
| **Class 7: The Huntington National Bank** | 3 | $ | 110,000.00 | |
| | | | | |
| **Class 8: R1 Truck Repair** | | | | |
| R1 Truck Repair/Yankee Freight | 6 | $ | 9,610.46 | Disputed |
| R1 Truck Repair/Yankee Freight | 7 | $ | 9,311.19 | Disputed |
| R1 Truck Repair/Yankee Freight | 8 | $ | 9,531.44 | Disputed |
| R1 Truck Repair/Yankee Freight | 9 | $ | 9,136.44 | Disputed |
| R1 Truck Repair/Yankee Freight | 10 | $ | 9,746.21 | Disputed |
| **TOTAL** | | **$** | **47,335.74** | |
| | | | | |
| **Class 9: Small Business Association** | 12 | $ | 543,825.34 | |

| **Class 10: World Buisness Lenders** | 5 | $ | 154,172.80 |
|---|---|---|---|

**Class 11: General Unsecured Creditors**

| | | | |
|---|---|---|---|
| BMO Harris Bank N.A. (deficiency) | 1 | $ | 12,517.99 |
| North Carolina Department of Revenue | 3 | $ | 1,021.93 |
| Caine & Weiner | | $ | 679.23 |
| Daimler Truck Financial | | | Unknown |
| Elkhania Sneed | | $ | 1,000.00 |
| First-Citizens Bank & Trust Company | 11 | $ | 104,637.61 |
| The Huntington National Bank (deficiency) | 3 | $ | 182,415.81 |
| Jeff Standley | | $ | 8,000.00 |
| IRS | 4 | $ | 36,832.63 |
| Smart Buisness Lender | | $ | 22,500.00 |
| Travis Reginato | | $ | 5,000.00 |
| Tyrone Patterson | | $ | 1,000.00 |
| V.A. Truck and Trailer Repair, LLC | | | Unknown |
| Velocity Truck Centers Reno | | | Unknown |
| **TOTAL** | | **$** | **375,605.20** |

**Class 12: Executory Contracts and Unexpired Leases**
Yankee Freight Systems LLC (VIN 1203)
NIS

**Legacy Enterprises of North America, LTD 24-03477-5-JNC**
**Exhibit C- Liquidation Analysis Unsecured Creditors**

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | LIQUIDATION VALUE | EQUITY |
|---|---|---|---|---|
| **Real Property** | | | | |
| 105 Dan Street, Windsor, NC 27983 | World Business Lender | $ 175,000.00 | $ 243,700.00 | $ 68,700.00 |
| Total real property: | | | $ 243,700.00 | $ 68,700.00 |
| | | | | |
| **Personal Property:** | | | | |
| WellsFargo Business Checking DIP Account (2-17-25) | | | | $ 19,353.81 |
| Cash on hand (2-17-25) | | | | $ 11.00 |
| Deposit for Yankee Freight | | | $ 2,500.00 | $ 2,500.00 |
| Deposit for City of Windsor Power and Water | | | $ 200.00 | $ 200.00 |
| Desks | | | $ 5,000.00 | $ 5,000.00 |
| Computer equipment and Electronics | | | $ 1,000.00 | $ 1,000.00 |
| 2015 Freightliner Truck VIN-34KGCD57FSGB1203 | | | $ 15,000.00 | $ 15,000.00 |
| 2017 Freightliner Truck VIN:5808 | | | $ 20,000.00 | |
| | | | | |
| 2017 Freightliner Truck VIN:5810 | Huntington National Bank | $ 292,415.81 | $ 30,000.00 | $ - |
| 2017 Freightliner Truck VIN:5812 | | | $ 30,000.00 | |
| 2017 Freightliner Truck VIN:5813 | | | $ 30,000.00 | |
| 2017 Freightliner Truck VIN:4067 | | | $ 20,000.00 | |
| 2017 Freightliner Truck VIN:4059 | BMO Harris Bank, N.A. | $ 47,517.99 | $ 15,000.00 | $ - |
| 2015 Freightliner Truck VIN:1389 | | | $ 15,000.00 | |
| 2015 Freightliner Truck VIN:3873 | Daimler Truck Financial | $ 50,000.00 | $ 15,000.00 | $ - |
| Trucking Equipment | | | $ 1,000.00 | $ 1,000.00 |
| Generator, Aircompressor, Handtools | | | $ 750.00 | $ 750.00 |
| Household goods and furnishings, Books, Safety Gear, Appliances | | | $ 16,000.00 | $ 16,000.00 |
| Total: | | | $ 445,150.00 | $ 114,503.81 |
| Total personal property: | | | $ 41,450.00 | $ 38,750.00 |
| Total personal property to be auctioned or sold: | | | $ 38,750.00 | $ 38,750.00 |
| Total real property to be auctioned or sold: | | | $ 243,700.00 | $ 68,700.00 |

| **Less** | | |
|---|---|---|
| Chapter 7 Auctioner Fees Real Property | | |
| 10% of first $25,000.00 | | $ (500.00) |
| 4% of balance | | $ (8,748.00) |
| | | |
| Chapter 7 Auctioner Fees - Personal Prop. | | |
| 20% of first $20,000 | | $ (400.00) |
| 10% of next $50,000 | | $ (1,875.00) |
| 4% of Balance | | $ - |
| | | |
| Trustee's Commission | | |
| 25% of first $5,000 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | | $ (4,500.00) |
| 5% of the next $50,000 to $1,000,000.00 | | $ (11,622.50) |
| 3% of the balance | | $ - |
| | | |
| Chapter 11 Administrative Claims (est.) | | $ (75,000.00) |
| | | |
| Priority Claims | | $ (72,104.16) |
| | | |
| **Available for General Unsecured Creditors** | | $ (61,495.85) |

**Legacy Enterprises of North America, LTD 24-03477-5-JNC**
**Exhibit D - Projections**

| | 2025 MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | JANUARY | 2026 FEBRUARY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | |
| BEGINNING BALANCE | 8,000.00 | 9,978.01 | 136.05 | 7,035.44 | 5,334.83 | 839.25 | 2,163.64 | 3,488.03 | 6,992.45 | 24,316.84 | 41,641.23 | 53,145.65 |
| INCOME | 40,000.00 | 40,000.00 | 60,000.00 | 60,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| OTHER | | | | | | | | | | | | |
| TOTAL RECEIPTS: | 48,000.00 | 49,978.01 | 60,136.05 | 67,035.44 | 105,334.83 | 100,839.25 | 102,163.64 | 103,488.03 | 106,992.45 | 124,316.84 | 141,641.23 | 153,145.65 |
| **EXPENSES** | | | | | | | | | | | | |
| CELL PHONE | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| UTILITIES | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| TRAILER RENTAL REPAIR | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 |
| VEHICLE REPAIR | 600.00 | 600.00 | 1,250.00 | 1,250.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 33,500.00 |
| VEHICLE INSURANCE | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| GROSS PAYROLL | 12,000.00 | 12,000.00 | 18,000.00 | 18,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| WORKERS COMP INSURANCE | 320.00 | 320.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| SUPPLIES | 150.00 | 150.00 | 150.00 | 150.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 |
| FUEL | 10,000.00 | 10,000.00 | 15,000.00 | 15,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 |
| PROFESSIONAL FEES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| REPAIRS & MAINTENANCE | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 |
| LICENSE FEES & PERMITS | 400.00 | 400.00 | 400.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| SERVICE CHARGES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| TOTAL EXPENSES: | 33,970.00 | 33,970.00 | 46,100.00 | 46,700.00 | 75,675.00 | 75,675.00 | 75,675.00 | 75,675.00 | 75,675.00 | 75,675.00 | 75,675.00 | 105,675.00 |
| **PLAN PAYMENTS** | | | | | | | | | | | | |
| CLASS 1 - ADMINISTRATIVE | | 6,000.00 | | 8,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 8,000.00 | | | | |
| CLASS 2 - AD VALOREM TAXES | - | | - | | - | | - | | - | | - | |
| CLASS 3 - TAXES | - | 5,819.97 | - | | 5,819.97 | | - | 5,819.97 | - | | 5,819.97 | - |
| CLASS 4 - BMO HARRIS BANK, N.A. | | | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 | 758.02 |
| CLASS 5 - DAIMLER TRUCK FINANCIAL | - | - | - | - | - | - | - | - | - | - | - | - |
| CLASS 6 - THE GARAGE | - | - | - | - | - | - | - | - | - | - | - | - |
| CLASS 7 - R1/YANKEE | - | - | - | - | - | - | - | - | - | - | - | - |
| CLASS 8 - SMALL BUSINESS ASSOCIATION | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 | 2,575.00 |
| CLASS 9 - THE HUNTINGTON NATIONAL BANK | | - | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 | 2,190.60 |
| CLASS 10 - WORLD BUSINESS LENDERS | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 | 1,108.84 |
| CLASS 11 - GENERAL UNSECURED CREDITORS | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 | 368.15 |
| CLASS 12 - EXEC. CONTRACTS/ UNEXP. LEASES | | | | | | | | | | | | |
| TOTAL PLAN PAYMENTS: | 4,051.99 | 15,871.96 | 7,000.61 | 15,000.61 | 28,820.58 | 23,000.61 | 23,000.61 | 20,820.58 | 7,000.61 | 7,000.61 | 12,820.58 | 7,000.61 |
| **BALANCE** | 9,978.01 | 136.05 | 7,035.44 | 5,334.83 | 839.25 | 2,163.64 | 3,488.03 | 6,992.45 | 24,316.84 | 41,641.23 | 53,145.65 | 40,470.04 |

**Legacy Enterprises of North America, LTD 24-03477-5-JNC**
**Exhibit D - Projections**

| | MARCH - DEC 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|
| **RECEIPTS** | | | | |
| BEGINNING BALANCE | $ 40,470.04 | $ 17,838.94 | $ 63,351.74 | $ 19,529.50 |
| INCOME | $ 1,000,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,200,000.00 |
| TOTAL RECEIPTS: | $ 1,040,470.04 | $ 1,217,838.94 | $ 1,263,351.74 | $ 1,219,529.50 |
| | | | | |
| **EXPENSES** | | | | |
| CELL PHONE | $ 4,500.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| UTILITIES | $ 5,500.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| TRAILER RENTAL REPAIR | $ 75,000.00 | $ 90,000.00 | $ 90,000.00 | $ 90,000.00 |
| VEHICLE REPAIR | $ 78,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 |
| VEHICLE INSUANCE | $ 66,000.00 | $ 72,000.00 | $ 72,000.00 | $ 72,000.00 |
| GROSS PAYROLL | $ 420,000.00 | $ 444,000.00 | $ 444,000.00 | $ 444,000.00 |
| WORKERS COMP INSURANCE | $ 8,000.00 | $ 9,600.00 | $ 9,600.00 | $ 9,600.00 |
| SUPPLIES | $ 4,125.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 |
| FUEL | $ 275,000.00 | $ 300,000.00 | $ 300,000.00 | $ 300,000.00 |
| PROFESSIONAL FEES (SAFETY) | $ 2,200.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 |
| REPAIRS & MAINTENANCE | $ 2,200.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 |
| LICENSE, FEES & PERMITS | $ 11,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| SERVICE CHARGES | $ 1,100.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| PURCHASE VEHICLES | | $ 80,000.00 | $ 160,000.00 | |
| TOTAL EXPENSES: | $ 952,625.00 | $ 1,078,100.00 | $ 1,158,100.00 | $ 998,100.00 |
| | | | | |
| **PLAN PAYMENTS** | | | | |
| CLASS 1 - ADMINISTRATIVE | $ - | $ - | $ - | $ - |
| CLASS 2 - AD VALOREM TAXES | $ - | $ - | $ - | $ - |
| CLASS 3 - TAXES | $ 25,750.00 | $ 23,279.88 | $ 23,279.88 | $ 23,279.88 |
| CLASS 4 - BMO HARRIS BANK, N.A. | $ 7,580.20 | $ 9,096.24 | $ 9,096.24 | $ 9,096.24 |
| CLASS 5 - DAIMLER TRUCK FINANCIAL | $ - | $ - | $ - | $ - |
| CLASS 6 - THE GARAGE | $ - | $ - | $ - | $ - |
| CLASS 7 - R1/YANKEE | $ - | $ - | $ - | $ - |
| CLASS 7 - SMALL BUSINESS ASSOCIATION | $ - | $ - | $ - | $ - |
| CLASS 7 - THE HUNTINGTON NATIONAL BANK | $ 21,906.00 | $ 26,287.20 | $ 26,287.20 | $ 26,287.20 |
| CLASS 7 - WORLD BUSINESS LENDERS | $ 11,088.40 | $ 13,306.08 | $ 13,306.08 | $ 13,306.08 |
| CLASS 8 - GENERAL UNSECURED CREDITORS | $ 3,681.50 | $ 4,417.80 | $ 13,752.84 | $ 13,752.84 |
| CLASS 9 - EXEC. CONTRACTS/ UNEXP. LEASES | $ - | $ - | $ - | $ - |
| TOTAL PLAN PAYMENTS: | $ 70,006.10 | $ 76,387.20 | $ 85,722.24 | $ 84,007.32 |
| | | | | |
| **BALANCE** | $ 17,838.94 | $ 63,351.74 | $ 19,529.50 | $ 137,422.18 |