**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| In the Matter of: | Chapter 11 |
| **LEGACY ENTERPRISES OF** | **Case No.: 24-03477-5-JNC** |
| **NORTH AMERICA, LTD** | |
| **Debtor** | |

| | | |
|---|---|---|
| | ) | |
| **LEGACY ENTERPRICES OF** | ) | |
| **NORTH AMERICA, LTD,** | ) | |
| **Debtor-in-Possession** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adversary Proceeding No.** |
| | ) | **25-_____-5-JNC** |
| **v.** | ) | |
| | ) | |
| **R1 TRUCK REPAIR, INC.,** | ) | |
| **YANKEE FREIGHT, LLC, and** | ) | |
| **NIKOLA RADOJLOVIC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

COMES NOW Legacy Enterprises of North America, LTD, debtor-in-possession ("Debtor" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants R1 Truck Repair, Inc. ("R1"), Yankee Freight, LLC ("Yankee"), and Nikola Radojlovic (collectively the "Defendants"), and in support thereof, states as follows:

1. This adversary proceeding relates to the Chapter 11 Bankruptcy, Subchapter V case of Legacy Enterprises, LTD, Case No: 24-03477-5-JNC commenced with the filing of a Petition for relief under Chapter 7 filed on October 4, 2024 (the "Petition Date"), in the United States Bankruptcy Court for the Eastern District of North Carolina.

2. The Bankruptcy Court ("Court") has jurisdiction over this matter pursuant to 28 U.S.C. 1334, 151, 157, and this matter is a core proceeding pursuant to 28 U.S.C. 157. This Court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**IDENTIFICATION OF PARTIES**

4.       Plaintiff is a business corporation organized and existing under the laws of the state of Nevada.

5.       Upon information and belief, R1 is a business entity organized and operating under the laws of the State of Illinois with its principal office located at 2717 S. 13th Avenue, Broadview, Illinois 60155.

6.       Upon information and belief, Yankee is a limited liability company organized and operating under the laws of the State of Illinois with its principal office located at 2717 S. 13th Avenue, Broadview, Illinois 60155.

7.       Upon information and belief, Nikola Radojlovic is a resident of Cook County, Illinois with unknown citizenship.

**FACTUAL ALLEGATIONS**

8.       The allegations set forth in paragraphs 1 through 7 are re-alleged and incorporated as if fully set forth herein.

9.       Plaintiff owns the following five 2017 Freightliner trucks:

> VIN 3AKJGLDR6HDHN5808,
> VIN 3AKJGLDR4HDHN5810,
> VIN 3AKJGLDR8HDHN5812,
> VIN 3AKJGDR7HSHU4067, and
> VIN 3AKJGLDR8HSHU4059

(the Freightliner trucks with VINs ending in 5808, 5810, 5812, 4067, and 4059 may be referred to collectively hereinafter as the "Trucks").

10.      Plaintiff estimates that the Trucks have a combined value of $115,000.00.

11.      When operating, Plaintiff estimates that each of the Trucks generates approximately $6,000 per week, gross income.

12.      The Trucks were garaged at a facility owned by R1 and/or Yankee located in Broadview, Illinois.

13.      Purportedly on February 29, 2024, an alleged Invoice was generated by R1 for

Truck 4059 in the amount of $4,988.59.

14.     Purportedly on March 21, 2024, an alleged Invoice was generated by R1 for Truck 4067 in the amount of $5,285.36.

15.     Purportedly on April 10, 2024, an alleged Invoice was generated by R1 for Truck ending in 5808 in the amount of $9,610.56.

16.     Purportedly on April 18, 2024, an alleged Invoice was generated by R1 for Truck ending in 5810.

17.     Purportedly on April 20, 2024, an alleged Invoice was generated by R1 for Truck ending in 5812.  The alleged invoices referenced in Paragraphs 13-17, above are collectively referred to herein as the ("Alleged Invoices").

18.     Plaintiff requested but was not sent any of the Alleged Invoices at the time they were purportedly generated, and first saw them after this Chapter 11 case was filed, in the context of motions filed against R1 and Yankee.

19.     Plaintiff never authorized R1 to perform the work in the Alleged Invoices.

20.     Purportedly on July 19, 2024, R1 sent letters with the subject: Notice of Intent to Enforce Mechanics Lien ("Notice Letters").

21.     Plaintiff did not receive any of the Notice Letters.

22.     R1 has never produced any proof of service of the Notice Letters.

23.     Huntington filed an Affidavit in the underlying bankruptcy case confirming that it never received any of the Notice Letters relating to the trucks on which it has a lien: 4808, 4810, and 4812. [Doc. No. 70].

24.     On July 25, 2024, R1 published Notices in the Chicago Sun Times, which purportedly included notice to David Faulk and other lien holders (collectively the "July Notices").

25.    The July Notices provided VIN numbers for trucks ending in 4067, 5665, 5808, 5810, and 5813.  Plaintiff does not have any information about any truck ending in VIN 5665.

26.    The July Notices included information about David Faulk but not the Plaintiff.

27.    On August 26, 2024, there was a purported public sale of the Trucks, at which R1 purchased the Trucks (the "Sale").

28.    On August 29, 2024, R1 published a Notice in the Chicago Sun Times again including reference to David Faulk, but not the Plaintiff, for Truck ending in VIN 4059 (the August Notice").

29.    On September 5, 2024, R1 published a Notice in the Chicago Sun Times again including reference to David Faulk, but not the Plaintiff, for Truck ending in VIN 4059.

30.    September 6, 2024, R1 published Notice in the Chicago Sun Times again including reference to David Faulk, but not the Plaintiff, for Truck ending in VIN 4059 (the September 5 and September 6 Notices are collectively referred to as the "September Notices").

31.    The August and September Notices were published by R1 *after* the Sale of the Trucks to R1.

32.    Plaintiff never received any type of sale notice for the Trucks.

33.    On October 4, 2024, the Petition Date, Plaintiff scheduled an amount owed to R1 of $40,000.00.

34.    On October 8, 2024, BMO Harris Bank ("BMO") filed a secured claim [Clm. No. 1] in the amount of $47,517.99 asserting a lien on trucks ending in VIN Nos. 4067 and 4059.

35.    On October 22, 2024, Huntington National Bank ("Huntington") filed a secured claim in the amount of $292,415.81, asserting a lien on trucks ending in VIN Nos. 5808, 5810, 5812 (and other trucks also). [Clm. No. 3]

36.      On October 31, 2024, Plaintiff filed its Amendments to Schedule E/F – Unsecured Creditors, which *inter alia*, amends the scheduled amount owed to R1 to include that such is "Disputed." [Doc. No. 21, pp. 1, 5]

37.      Plaintiff is party to an unexpired pre-petition contract with Yankee for the leased use of a 2015 Cascadia freightliner truck ending in VIN 1203 ("2015 C Freightliner").

38.      Plaintiff leased the 2015 C Freightliner to Yankee and as part of that lease agreement provided Yankee with title to the 2015 C Freightliner.

39.      Defendants at all times informed Plaintiff that R1 would retitle the 2015 C Freightliner to Plaintiff once Plaintiff had repaid R1 for prior repair expenses related to that truck.

40.      On April 1, 2024, Trucks 4067, 5808, 5810, 5812 were recalled to R1 and Yankee's business, and were delivered by Plaintiff's drivers on or about April 3, 2024.

41.      Plaintiff began requesting information about the status of the Trucks in or around May 2024, and R1 and Yankee both consistently refused to provide Plaintiff with information about the Trucks.

42.      More specifically, Plaintiff was never provided any invoices for service or repairs, despite requesting the same, and was only provided Alleged Invoices via the Proofs of Claim filed by R1.   See Proofs of Claim 6-10 (noting other names that R1 uses as that of Yankee).

43.      Plaintiff never authorized or in any way consented to any repair work on the Trucks as set forth in the Alleged Invoices.

44.      Defendants repeatedly refused to provide Plaintiff with possession of the Trucks or with information about the whereabouts of Trucks.

45.      Defendants never informed Plaintiff that the Trucks had been sold by R1 to itself, despite Plaintiff consistently contacting R1 and Yankee representatives to request information and

whereabouts of the Trucks.

46.     Instead, Defendants convinced Plaintiff that R1 and Yankee were attempting to negotiate with Plaintiff's lenders on behalf of Plaintiff to reduce the remaining amounts owed on the Trucks.

47.     Defendants informed Plaintiff that BMO and Huntington Bank had repossessed the Trucks, and that Plaintiff still needed to pay R1 and Yankee for alleged repair work.

48.     Following the purported repossession of Plaintiff's Trucks, Plaintiff was then only in possession of the Truck ending in 1203.  Plaintiff's contract to operate Truck 1203 was through Yankee.

49.     Yankee deducted amounts allegedly owed by Plaintiff for purported repairs of the Trucks from the payments Yankee owed to Plaintiff for its operation of Truck 1203. Upon information and belief, Huntington contacted R1 and Yankee via telephone to try and locate the Trucks, and R1 denied having any knowledge of the Trucks and intentionally disconnected the call.

50.     R1 and Yankee conducted a purported sale of the Trucks, and R1 allegedly purchased the Trucks at that purported sale.

51.     R1 had the Trucks retitled in Illinois in December 2024, after the filing of this Chapter 11 case.

52.     David Faulk, President of Plaintiff, ("Mr. Faulk") visited the site in Broadview, Illinois and personally viewed the following Trucks there: 5808; 5810; and 5812.

53.     Mr. Faulk also observed Truck 4059 being operated by a driver working for a company, that on information and belief is affiliated with R1 and Yankee.

54.     Plaintiff had no knowledge that R1 and Yankee had taken ownership of the Trucks.

55.     R1 and Yankee had possession of the Trucks and were concealing them from Plaintiff in order to retain possession and ownership of the Trucks and use them to generate income for R1 and Yankee.

56.     Plaintiff relies on the Trucks to operate its trucking business.

57.     If Plaintiff had possession of the Trucks during the time they were possessed by Defendants, Plaintiff would have utilized the Trucks to generate funds to pay its debts.

58.     On November 20, 2024, Plaintiff filed a Motion for Turnover of Property of the Bankruptcy Estate (the "R1 Turnover Motion"). [Doc. No. 31]

59.     No Responses to the R1 Turnover Motion were filed.

60.      On December 11, 2024, the Court entered its Order Granting the R1 Turnover Motion (the "R1 Turnover Order"). [Doc. No. 38]

61.     The R1 Turnover Motion requests and the R1 Turnover Order orders the turnover of Trucks as property of the Plaintiff/Debtor's Estate.

62.     On Friday, December 27, 2024, at 4.25 p.m. Mr. Faulk on behalf of Plaintiff spoke with Nikola Radojlovic ("Mr. Radojlovic"), who holds himself out as being the owner of Yankee along with a partner or associate who is referred to as "Nik." Mr. Radojlovic informed Plaintiff that a third-party, who he would not disclose, was negotiating recovery of the Seized Trucks between BMO and Huntington.

63.     Also on Friday, December 27, 2024, Mr. Radojlovic referred Plaintiff to the purported manager of R1, Nemo. Plaintiff has previously communicated with Nemo in person and via text message, and Nemo has consistently claimed to have no information about the Seized Trucks and has further indicated to Plaintiff that he does not wish to discuss the Seized Trucks with Plaintiff.

64.     On January 17, 2025, R1 filed Proofs of Claims 6 through 10 (the "Claims").

65.     It was on January 17, 2025, that Plaintiff first learned that its Trucks had been sold to R1 in August of 2024.

66.     R1 and Yankee are related companies in that they share a physical site location, and they share an office space, such is also indicated on R1's Claims.

67.     Some of Trucks have been re-branded with "Yankee" insignia. Plaintiff identified two of the R1 Trucks with Yankee insignia, including the truck ending in VIN 5810.

68.     Based upon the Claims filed, R1 has asserted that it is a secured creditor due to a purported mechanics lien on each of the Trucks.

69.     Plaintiff never received any of the Alleged Invoices from R1 or Yankee for any alleged repairs work or improvements as set forth in the Alleged Invoices.

70.     Plaintiff never received any notice of a final invoice for any alleged repairs or improvements performed by R1 or Yankee on the Trucks.

71.     Plaintiff never received any notice of an intent to enforce a mechanics lien from R1 or Yankee.

72.     Plaintiff never received any notice of sale of any of the Trucks.

73.     Following the sale of the Trucks to itself, R1 filed a Mechanic's Lien Affirmation for each of the Trucks in order to receive a Certificate of Title of a Vehicle for each of the Trucks.

74.     The Mechanic's Lien Affirmation included false information regarding notice provided to Plaintiff and lienholders.

75.     The Mechanic's Lien Affirmation included false information regarding the publication of notice in the Chicago Sun Times.

76.     On December 12, 2024, R1 received a Certificate of Title for each of the Trucks

from the State of Illinois.

77.     Following entry of the Turnover Order, R1 had a Certificate of Vehicle Title prepared for each of the Trucks with R1 listed as owner of the same.

78.     Following the Show Cause Hearing, Plaintiff attempted to retrieve the Trucks from R1 with prior notice to R1 on two separate dates only to arrive at the site in Broadview and find the Trucks damaged and inoperable.

79.     Mr. Edwin M. Hardy entered an appearance on behalf of R1 and Yankee.  [Doc. Nos. 60, 61]

80.     On January 31, 2025, Plaintiff filed a Status Report Regarding Yankee's and R1's Compliance with Prior Orders of This Court ("First Report of Non-Compliance") [Doc. No. 65]. The First Report of Non-Compliance indicated, *inter alia*, that Counsel for Defendants requested that Plaintiff pick up the Trucks from Illinois, and during pick-up Plaintiff inspected the Trucks which were damaged or would not otherwise start and could not be picked up by Plaintiff.

81.     On February 2, 2025, Plaintiff filed a Second Status Report Regarding Yankee's and R1's Compliance with Prior Orders of This Court ("Second Report of Non-Compliance") [Doc. No. 87], which indicated, *inter alia*, that Counsel for Defendants had informed Counsel for Plaintiff that the Trucks were in road-ready condition for pick-up.  This was false.

82.     On February 20, 2025, Plaintiff filed a Supplement to the Second Report of Non-Compliance indicating issues and costs associated with registering and retitling Truck ending in 4067, and estimating the costs to register and retitle the four remaining Trucks. [Doc. No. 89]

83.     On March 4, 2025, Plaintiff filed a Second Supplement to the Second Report of Non-Compliance indicating further costs and complications with picking up the remaining Trucks from R1 and Yankee. [Doc. No. 90].

84.     On April 3, 2025, Plaintiff and R1 and Yankee entered into a Consent Order Resolving Yankee's and R1's Compliance with Prior Orders of the Court ("Consent Order") [Doc. No. 101].  The Consent Order indicated, inter alia, that the 2015 C Freightliner ending in VIN 1203 had been released to Plaintiff and that the Title for such would be turned over within five (5) days of entry of the Consent Order, and that the four remaining Trucks would be inspected by a mechanic to ensure their road-readiness at the expense of Defendants.

85.     On April 17, 2025, Defendant filed a Status Report regarding the Consent Order indicating, inter alia, that Defendants had failed to turnover the Title to the 2015 Freightliner. [Doc. No. 110]

86.     Plaintiff received title to the 2015 Freightliner on April 22, 2025.

87.     Defendants informed Counsel for Plaintiff that the remaining Trucks were ready to be picked up from the site in Broadview on April 14, 2025.

88.     The delayed retrieval of the Trucks caused Plaintiff to not operate its trucking business for a period in excess of 366 days, at a cost to be more particularly set forth at trial.

89.     The continued unlawful possession of the Trucks by R1 reduced Plaintiff's gross income by approximately $6,000 per week per truck.

90.     Plaintiff incurred additional costs to re-register Trucks 1203, 4067, 5808 in North Carolina, Plaintiff and those costs will be more particularly set forth at trial.

91.     Wear and tear and other damage to the Trucks was caused during the period of time in which Defendants possessed the Trucks, the estimated costs of those repairs will be more particularly set forth at trial.

**FIRST CAUSE OF ACTION**
**ABUSE OF PROCESS**

92.     Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as

if fully set forth herein.

93.     The State of Illinois has a process by which a mechanic can assert a lien on personal property.

94.     The State of Illinois has a process by which storage fees can create a lien on personal property.

95.     R1 did not follow Illinois' process to perfect any lien on the Trucks.

96.     R1 sought to take possession of the Trucks for an ulterior motive or purpose of profiting from the use of the Trucks itself.

97.     R1 filed an affidavit with the State of Illinois purporting that it had followed Illinois' procedure to assert a mechanic's lien on the Trucks.

98.     R1's false affidavit allowed R1 to have the Trucks re-titled in favor of R1 by the State of Illinois.

99.     R1 abused Illinois' mechanics' lien process in order to gain title to Plaintiff's property.

100.    Plaintiff is entitled to compensatory and punitive damages based upon R1's abuse of process.

<u>**SECOND CAUSE OF ACTION**</u>
**CONVERSION**

101.    Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

102.    Plaintiff is the rightful owner of the Trucks.

103.    Plaintiff was the rightful owner of the Trucks at the time when R1 took possession.

104.    Defendants refused to turnover the Trucks to Plaintiff.

105.    R1 and Yankee caused the title of each of the Trucks to be transferred to R1.

106.    Following Defendants having the Trucks retitled, R1 and Yankee then used the Trucks for their own benefit and use.

107.    Defendants refused to provide Plaintiff any information about the whereabouts of Plaintiff's Trucks until required to do so by the Contempt Order.

108.    Plaintiff is entitled to actual damages plus interest, along with punitive damages.

## THIRD CAUSE OF ACTION
### FRAUD

109.    Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

110.    R1 and Yankee had possession and/or control of Plaintiff's Trucks at all times relevant to this Complaint.

111.    Defendants informed Plaintiff that they did not know the whereabouts of Plaintiff's Trucks.

112.    Defendants informed Plaintiff that "banks" had picked up Plaintiff's Trucks.

113.    Plaintiff could not locate its Trucks.

114.    Plaintiff could not locate any person or entity with knowledge as to the location of the Trucks.

115.    Plaintiff could not use or access the Trucks.

116.    Plaintiff relied on statements of Defendants that R1 did not have the Trucks and contacted its banks to try and locate the Trucks.

117.    R1 and Yankee, in fact, had possession of the Trucks and were using the Trucks for their own purposes.

118.    Defendants intentionally hid the Trucks from Plaintiff.

119.    Plaintiff was damaged when it could not utilize the Trucks for its trucking business.

120.    Plaintiff's Trucks were physically damaged by R1 and Yankee.

121.    Plaintiff is entitled to damages for Defendant's fraud.

## FOURTH CAUSE OF ACTION
## TRESPASS TO CHATTELS

122.    Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

123.    Plaintiff is the owner of the Trucks

124.    Plaintiff has a possessory interest in the Trucks.

125.    R1 and Yankee took possession of the Trucks from Plaintiff.

126.    R1 and Yankee then utilized the Trucks, by operating them and/or allowing others to operate them.

127.    R1's and Yankee's utilization of the Trucks was not for Plaintiff's benefit.

128.    R1's and Yankee's utilization of the Trucks caused wear and tear on the Trucks.

129.    R1's and Yankee's utilization of the Trucks begin in February 2024 and continued until the Trucks were returned to Plaintiff during the course of the underlying bankruptcy proceeding.

130.    The wear and tear to the Trucks are damages.

131.    Plaintiff is entitled to recover damages based on R1's and Yankee's trespass.

## FIFTH CAUSE OF ACTION
## MALICIOUS AND WRONGFUL ATTACHMENT

132.    Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

133.    R1 and Yankee had no basis to believe they had perfected a lien on the Trucks.

134.    Defendants hid the Trucks and information from Plaintiff.

135.    R1 and Yankee alleged that they provided Plaintiff and Plaintiff's secured creditors with notice of R1's attachment.

136.    R1 and Yankee provided no notice to Plaintiff or Plaintiff's secured creditors.

137.    Defendants took steps to hide information from Plaintiff so that they could take possession of the Trucks to benefit R1 and Yankee.

138.    R1 filed a false Mechanic's Lien Affidavit with the State of Illinois.

139.    The State of Illinois, based on the false affidavit, had Plaintiff's Trucks retitled to R1.

140.    Plaintiff was denied possession and access to its Trucks for a period of 366 days at a cost to be determined at trial.

141.    Plaintiff is entitled to damages as a result of R1's and Yankee's malicious and wrongful attachment of the Trucks.

## SIXTH CAUSE OF ACTION
## OBJECTIONS TO CLAIMS 6 – 10

142.    On January 17, 2025, R1/Yankee filed Proof of Claim Nos. 6 - 10 (collectively Claim Nos. 6 – 10 are referred to as the "Claims").  The Claims are identified as follows:

| R1 Truck Repair/Yankee Freight | 6 | $ | 9,610.46 |
|---|---|---|---|
| R1 Truck Repair/Yankee Freight | 7 | $ | 9,311.19 |
| R1 Truck Repair/Yankee Freight | 8 | $ | 9,531.44 |
| R1 Truck Repair/Yankee Freight | 9 | $ | 9,136.44 |
| R1 Truck Repair/Yankee Freight | 10 | $ | 9,746.21 |
| **TOTAL** | | **$** | **47,335.74** |

143.    R1/Yankee's Claims alleged a total amount of $47,335.74 as secured claims. R1/Yankee asserts the basis of its purported secured Claims is a mechanic's lien on Debtor's Trucks.

144.    Proper notice was sent to R1/Yankee of Debtor's bankruptcy.

145.    Debtor objects to R1/Yankee's purported mechanic's lien.  Debtor further objects to R1/Yankee's unauthorized possession of the Trucks.  Debtor did not authorize the repairs purportedly performed by R1/Yankee, and was not given an invoice or itemization of repairs, until R1/Yankee filed documentation with its proof of Claims.  Debtor also objects to R1/Yankee's transfer of title of the Trucks to R1 name after Debtor filed its bankruptcy petition.

146.    Debtor's Trucks are the subject of this Court's Order Granting Motion for Turnover of Property of the Bankruptcy [Doc No. 38], Order of Contempt as to Yankee and R1 and Directing Further Show Cause [Doc. No. 57], Second Order Regarding Continued Contempt of Yankee and R1 [Doc. No. 78], and R1/Yankee returned the Trucks to road-ready condition and they have been returned to Debtor, per this Court's orders.

147.    R1/Yankee does not have a valid mechanic's lien on the Truck.

148.    Debtor requests that the Court disallows the Claims in their entirety.

WHEREFORE, the Plaintiff prays of the Court the following:

1.    That the Court enter an order finding that Plaintiff is entitled to compensatory and punitive damages based upon R1's abuse of process;

2.    That the Court enter an order finding that due to R1's and Yankee's conversion of Plaintiff's Property, Plaintiff is entitled to actual damages plus interest, along with punitive damages;

3.    That the Court enter an order finding that Plaintiff is entitled to damages for Defendants' fraud.

4.    That the Court enter an order finding that Plaintiff is entitled to recover damages based on R1's and Yankee's trespass.

5.        That the Court enter an order finding that Plaintiff is entitled to damages as a result of R1's and Yankee's malicious and wrongful attachment of the Trucks.

6.        That the Court enter an order finding Nikola, R1, and Yankee jointly and severally liable for damages caused to Plaintiff.

7.        That the Court enter an Order disallowing Claims 6-10 in their entirety.

10.      For such other and further relief as the Court deems just and proper.

This the 10th day of July, 2025.

s/George Mason Oliver
GEORGE MASON OLIVER
N.C. State Bar #26587
The Law Offices of
George Oliver, PLLC
PO Box 1548
New Bern, NC  28563-1548
(252) 633-1930
(252) 633-1950 (fax)
Email:
george@georgeoliverlaw.com
*Attorney for Plaintiff*

## VERIFICATION

DAVID FAULK first being duly sworn, deposes and says that he is authorized to execute this Verification; that he has read the foregoing document, and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated upon information and belief, and as to those, he believes it to be true.

_David Faulk_

David Faulk, President
Legacy Enterprises of North America LTD

I, ERIK PARKER                    , a Notary Public of Bertie          County, State of North Carolina, do hereby certify that DAVID FAULK (the "Signatory") personally appeared before me this day and acknowledged the execution of the foregoing instrument.

I certify that the Signatory personally appeared before me this day and

*(check one of the following)*

____ I have personal knowledge of the Signatory; *or*

✓ I have seen satisfactory evidence of the Signatory's identity by a current state or federal identification with the Signatory's photograph in the form of:

✓ a driver's license *or*

____ in the form of _____; *or*

____ a credible witness has sworn to the identity of the Signatory.

The Signatory acknowledged to me that he has voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated.

Sworn and subscribed before me this 9th day of July              , 2025.

_Erik Parker_

Notary Public

Printed Name: ERIK PARKER
My Commission expires: FEB 26, 2026

[Notary Seal: Erik Parker / NOTARY PUBLIC / BERTIE COUNTY, NC]